IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| CODY SPRINGS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| PRIME CARE MEDICAL, INC., | : | |
| WEXFORD HEALTH SOURCES, INC., | : | |
| and | : | |
| CORRECT CARE SOLUTIONS, LLC | : | NO. 15-2684 |

MEMORANDUM

Dalzell, J.                                                        April 27, 2016

## I.  Introduction

Plaintiff Cody Springs brings claims under 42 U.S.C. § 1983 against defendants Wexford Health Sources, Inc. ("Wexford"), Correct Care Solutions, LLC ("Correct Care"), and PrimeCare Medical, Inc. ("PrimeCare") for alleged violations of his Eighth Amendment rights. Defendants have moved for summary judgment, arguing that Springs has failed to exhaust his administrative remedies pursuant to the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA"). This Court has jurisdiction pursuant to 28 U.S.C. § 1331.

Because Springs has failed to meet his burden under Fed. R. Civ. P. 56(a) to respond to the defendants' proffered facts with more than mere denials, and there are no disputes of material fact regarding Springs's failure to exhaust his administrative remedies, we will grant the defendants' motions for summary judgment

## II.  Standard of Review

Fed. R. Civ. P. 56(a) provides:

> A party may move for summary judgment, identifying each claim or defense -- or the part of each claim or defense -- on which summary judgment is sought. The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter

of law. The court should state on the record the reasons for granting or denying the motion.

A party moving for summary judgment bears the initial burden of informing the district court of the basis for its argument that there is no genuine issue of material fact by identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal quotations omitted). If the moving party meets this initial burden, then the non-moving party must show via submissions beyond the pleadings that there are genuine factual issues for trial. Id. at 324. The non-moving party must respond with facts of record that contradict the facts identified by the moving party and may not rest on mere denials. Id. at 321 n.3.

There is a genuine issue of material fact only when there is sufficient evidence such that a reasonable juror could find for the party opposing the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 251-52 (1986) (explaining further that a mere scintilla of evidence is insufficient). Material facts are those that would affect the outcome of the case under the governing law. Id. at 248. The Court may not make credibility determinations or weigh the evidence and must draw all reasonable inferences in favor of the non-moving party. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000); Amour v. County of Beaver, Pa., 271 F.3d 417, 420 (3d Cir. 2001). Our function is to determine whether there are genuine issues for trial, and we may not prevent a case from reaching a jury simply because we favor one of several reasonable views of the evidence. Abraham v. Raso, 183 F.3d 279, 287 (3d Cir. 1999) (citing Anderson, 477 U.S. at 249).

## III.    **Factual and Procedural Background**

2

We ordered the defendants to file motions for summary judgment on the limited issue of whether Springs exhausted his administrative remedies under the PLRA. See January 4, 2016 Order. We recite only the facts relevant to this threshold issue.

As of November 5, 2015, plaintiff Cody Springs was incarcerated at the Florence County Correctional Facility in South Carolina, but before that, he was in a variety of prisons in Pennsylvania. Springs Dep. 5:20-25. From September of 2013 until February of 2014, Springs was incarcerated at the Monroe County Correctional Facility ("MCCF"). Id. at 7:14-22. Springs was transferred to the Pennsylvania State Correctional Institution at Graterford ("SCI Graterford") in February of 2014 and remained there until June of 2014. Id. at 8:3-8. After a brief processing detention at SCI Camp Hill, Springs was transferred to SCI Chester in July of 2014. Id. at 8:12-23. Springs remained at SCI Chester until May of 2015, when he was transferred to SCI Benner. Id. at 9:2-13.

Defendant PrimeCare was the exclusive provider of medical treatment to inmates housed at MCCF during Springs's time there. Second Am. Compl. ¶¶ 5-7. Defendant Wexford was the exclusive provider of medical treatment to inmates housed at SCI Graterford and SCI Chester until September of 2014, after which defendant Correct Care became the exclusive provider. Id. at ¶¶ 8-9. Springs alleges the defendants violated his Eighth Amendment rights by failing to address his concerns regarding his epilepsy medication, safe sleeping arrangements in light of his nighttime seizures, and follow-up care for a broken jaw from a fall from a top-tier bunk during a nighttime seizure.[1]

---

[1] Because we write only for the parties, and the parties' motions for summary judgment pertain only to the limited issue of administrative exhaustion, our very brief factual recitation comes from the second amended complaint without the benefit of any subsequent discovery.

Springs suffers from epilepsy. While he was incarcerated at MCCF, he claims PrimeCare changed his medication from Depakote to Neurontin Oral and refused his repeated requests to be

A.    __Grievances at MCCF__

Inmates at MCCF submit all grievances to the prison authorities, and any grievances that involve the Medical Department are forwarded directly to that Department. Dullen Aff. ¶¶ 4-5.[2] Copies of grievances are placed in the inmate's medical file and also forwarded to PrimeCare's corporate office, where a log is kept. Id. at ¶¶ 6, 7-10. MCCF's Medical Department received no grievances from Springs during his incarceration there and PrimeCare's corporate office has no copies or log entries for any grievances from Springs. Id. at ¶¶ 11-12.

On one of his intake forms, Springs indicated that he received a MCCF Inmate Handbook, though he later claimed that he did not. PrimeCare MSJ Ex. D; Springs Dep. 128:17-25. The Handbook explains the grievance procedure, including the requirement that all grievances must be submitted in writing on an official grievance form and given to the Grievance Coordinator. PrimeCare MSJ Ex. E at 6. Springs's MCCF prison file contains multiple inmate requests, complaints, and sick call forms, none of which refer to any complaints regarding Springs's medication. PrimeCare MSJ Ex. F at 3-11; Springs Dep. 124:17 – 125:10.  His prison file also notes that Springs had substantial contact with prison staff and the Medical Department for a variety of disciplinary and health-related issues. PrimeCare MSJ Ex. F.

_____

given Depakote instead, even though he had started to have more frequent seizures after he started taking Neurontin Oral. Second Am. Compl. ¶¶ 10, 14, 17-18, 20, 22.

When Springs was incarcerated at SCI Graterford, he was placed on a top-tier bunk in deference to a first-come, first-serve policy of bunk assignment, even though he claims he had a medical directive to be placed on a bottom-tier bunk. Id. at ¶¶ 23-26. Springs continued to have seizures at Graterford, sometimes in his sleep, and during one such nighttime seizure he fell off the top-tier bunk and fractured his jaw. Id. at ¶¶ 27-39. Although Springs received detailed follow-up care instructions from the treating hospitals, he avers that SCI Graterford and Wexford disregarded those medical directives, which resulted in him developing a jaw deformity from the untreated fracture. Id. at ¶¶ 40-45. After Springs was transferred to SCI Chester, he states that Correct Care also did not follow his medical directives, which resulted in him developing numbness and losing sensation in the right side of his face. Id. at ¶¶ 47-52.

[2] Stephanie L. Dullen, LPN is the Acting Health Service Administrator for PrimeCare Medical, Inc. at MCCF.

Springs claims he filled out at least three grievance forms regarding his medication while he was housed at MCCF, all of which he directed to medical staff or personnel, but he received no response as to any of them. Springs Dep. 73:24 – 74:3, 74:10-18, 126:15-25, 127:3-4. Springs says he spoke with the unit manager at MCCF regarding his grievances, and that the unit manager said he would get back to him. Springs Dep. 75:4-12. Springs also says he filled out multiple sick call slips and made many verbal requests to have his medication changed. Springs Dep. 133:17 – 134:13.

B.     Grievances with the Pennsylvania Department of Corrections

The Pennsylvania Department of Corrections ("DOC") provides inmates with a three-step administrative grievance appeal process to resolve issues relating to their incarceration. Moore Aff. ¶ 4.[3] Inmates, in compliance with the DC-ADM 804 administrative directive governing the grievance process, must first file their grievances with the Facility Grievance Coordinator at the facility where the events complained of took place. Id. at ¶ 5. If the inmate is dissatisfied with the initial review of the grievance, he may file an appeal with the Superintendent. Id. at ¶ 6. Upon receiving the Superintendent's decision, the inmate may appeal for final review to SOIGA. Id. at ¶ 7. This grievance process applies to all prisons within the Pennsylvania DOC, including SCI Graterford, SCI Chester, SCI Camp Hill, and SCI Benner. Id. at ¶ 12. Simply submitting sick call slips to the prison's Medical Department does not initiate the grievance process. The process is only initiated by completing the Official Inmate Grievance Form pursuant to DC-ADM 804 and providing the prison with the completed form. Id. at ¶ 14. SOIGA has no record of any grievances filed by Springs. Id. at ¶ 11.

---

[3] Keri Moore is the Assistant Chief of the Secretary's Office of Inmate Grievances and Appeals ("SOIGA").

The Pennsylvania DOC, in response to a subpoena, averred that Springs filed no grievances with any of its prisons during his incarceration. Letter from Helen I. Shambaugh, Grievance Review Officer, Pa. DOC to Caitlin J. Goodrich, Esq., Weber Gallagher (July 14, 2015). None of the individual DOC facilities in which Springs was incarcerated have a record of any grievances. See Letter from Holly Becker-Bachik, Superintendent's Assistant, SCI Benner, Pa. DOC to Caitlin Goodrich, Esq., Weber Gallagher (Dec. 15, 2015) (averring no grievances were filed at SCI Benner); Letter from Wendy Shaylor, Superintendent's Assistant, SCI Graterford, Pa. DOC to Caitlin Goodrich, Esq., Weber Gallagher (Dec. 9, 2015) (averring no grievances were filed at SCI Graterford); Letter from Louisa Perez, Superintendent's Assistant, SCI Chester, Pa. DOC to Caitlin Goodrich, Esq., Weber Gallagher (undated) (averring no grievances were filed at SCI Chester);

Springs says he did not file any grievances at SCI Chester, but claims he filed one or two at SCI Benner. Springs Dep. 77:24 – 78:10. Springs also alleges he "put in" more than three grievances at SCI Graterford, but received no responses to those grievances. Id. at 70:21-25, 73:7-23, 76:1-4. He further avers that he spoke with the unit manager at SCI Graterford about the lack of responses, but he spoke to no one else about his grievances. Id. at 76:5-19.

## IV.     Discussion

The PLRA precludes prisoners from filing Section 1983 actions until they have exhausted all available administrative remedies. 42 U.S.C. § 1997e. Proper exhaustion is mandatory, and so inmates must make full use of the grievance process. Woodford v. Ngo, 548 U.S. 81, 85, 94 (2006). Failure to exhaust is an affirmative defense that must be pled and proven. Small v. Camden Cty., 728 F.3d 265, 268 (3d Cir. 2013). Exhaustion is a question to be determined by the district court, even if that determination requires the resolution of disputed facts. Id. at 269. The

district court may resolve factual disputes relevant to the exhaustion issue, and there is no error when the district court acts as the factfinder because exhaustion is a preliminary issue for which no right to a jury trial exists. Id. at 271. A court cannot excuse the failure to exhaust. Nyhuis v. Reno, 204 F.3d 65, 73 (3d Cir. 2000) (explaining that even futility is no excuse).

### A.      PrimeCare's Motion for Summary Judgment

Springs failed to timely file a response to PrimeCare's motion for summary judgment. See PrimeCare Reply at 1-2; see also Pl.'s Resp. in Opp. passim (omitting any reference to PrimeCare or its motion for summary judgment). We cannot grant a Rule 56 motion merely because it is uncontested. See Loc. R. Civ. P. 7.1(c). But when a party with the burden of proof files a motion for summary judgment, and the opposing party fails to respond, we may enter judgment in the moving party's favor if we determine, based on the facts presented in the motion, that it is entitled to judgment as a matter of law. Anchorage Assocs. v. Virgin Islands Bd. of Tax Review, 922 F.2d 168, 176-78 (3d Cir. 1990) (explaining further that neither a hearing nor any consideration of the Poulis factors is required in such cases). We are also not obliged to initiate our own investigation into the reasons for the failure to respond, and such failure waives the opponent's right to controvert the asserted facts in the motion for summary judgment or the supporting material accompanying it. Id. at 175-76, 178.

PrimeCare proffers facts in its motion for summary judgment that demonstrate Springs failed to initiate any grievances while at MCCF, and thus failed to exhaust his administrative remedies. There are no records of any properly-filed grievance forms. Springs's bald assertion in his deposition that he filed grievances while housed at MCCF does not disturb that conclusion. More importantly, Springs has failed to make that argument -- or any argument -- in opposition to PrimeCare's motion.

We will therefore grant PrimeCare's motion because PrimeCare has proffered facts demonstrating that it is entitled to judgment as a matter of law based upon Springs's failure to exhaust his administrative remedies.

### B.      Correct Care's Motion for Summary Judgment

There is no dispute that Springs failed to file any grievances regarding his treatment by Correct Care while he was housed at SCI Chester. Springs Dep. 77:24 – 78:10 (plaintiff's admission that he never filed any grievances while at SCI Chester); Letter from Helen I. Shambaugh, Grievance Review Officer, Pa. DOC to Caitlin J. Goodrich, Esq., Weber Gallagher (July 14, 2015) (averring that Springs filed no grievances while incarcerated in Pennsylvania DOC facilities); Letter from Louisa Perez, Superintendent's Assistant, SCI Chester, Pa. DOC to Caitlin Goodrich, Esq., Weber Gallagher (undated) (averring no grievances were filed at SCI Chester). Nor has Springs made any allegations in his second amended complaint regarding Correct Care's treatment while he was incarcerated at SCI Benner or any other Pennsylvania DOC facility that Correct Care serviced.

Thus, there is no dispute of material fact regarding Springs's failure to exhaust his administrative remedies with respect to his Section 1983 claim against Correct Care during his time at SCI Chester or any other DOC facility that Correct Care serviced. We will therefore grant Correct Care's motion for summary judgment.

### C.      Wexford's Motion for Summary Judgment

Springs claims he "put in" more than three grievances while at SCI Graterford, but received no responses to those grievances. Id. at 70:21-25, 73:7-23, 76:1-4. In response to a subpoena issued by Wexford, the DOC averred that Springs did not file any grievances at all during his incarceration. Letter from Helen I. Shambaugh, Grievance Review Officer, Pa. DOC

to Caitlin J. Goodrich, Esq., Weber Gallagher (July 14, 2015). Prison authorities at SCI

Graterford also averred, in response to a subpoena from Wexford, that Springs did not file any

grievances while at that specific facility. Letter from Wendy Shaylor, Superintendent's Assistant,

SCI Graterford, Pa. DOC to Caitlin Goodrich, Esq., Weber Gallagher (Dec. 9, 2015).

 In response, Springs first argues that there is a dispute of material fact as to whether he

exhausted his administrative remedies. Pl.'s Resp. in Opp. at unnumbered p. 10. Springs further

argues, in the alternative, that if he did fail to exhaust his administrative remedies, it was because

there were none available to him. Id.

 The availability of administrative remedies to prisoners is a question of law, even though

it necessarily involves a factual inquiry. Small, 728 F.3d at 271. Remedies that are not

reasonably communicated to inmates may be considered unavailable for exhaustion purposes. Id.

Proper exhaustion requires completing the administrative review process in accordance with the

applicable procedural rules for the prison grievance process. Id. at 272. Completing the

administrative review process requires substantial compliance with each prison's grievance

procedures. Id. In Small, our Court of Appeals determined that because the prison's grievance

procedures did not contemplate an appeal from a non-decision, the appeals process was

unavailable to a prisoner who did not receive either a response or a decision regarding two of his

grievances. Id. at 273. But, inmates must complete all steps of the administrative review process

in accordance with the rules that are defined by the prison grievance process. See Byrd v.

Shannon, 715 F.3d 117, 127 (3d Cir. 2013) (upholding the district court's grant of summary

judgment on the basis of failure to exhaust where the prisoner failed to identify those persons

who may have had information related to his grievance when the prison required that step).

A plaintiff's bald assertions, without any supporting facts, cannot overcome a motion for summary judgment. Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993) ("Where the movant has produced evidence in support of its motion for summary judgment, the nonmovant cannot rest on the allegations of the pleadings and must do more than create some metaphysical doubt."). Nor is the Court required to give the non-moving plaintiff the benefit of unreasonable inferences. See GFL Advantage Fund, Ltd. v. Colkitt, 272 F.3d 189, 210-11 (3d Cir. 2001) (rejecting an unreasonable inference of motive in light of an alternative, reasonable inference from the same facts). See also, e.g., Harvey v. City of Philadelphia, 253 F. Supp. 2d 827, 831 (E.D. Pa. 2003) (granting summary judgment in defendants' favor because plaintiff failed to exhaust his administrative remedies). In Harvey, the defendants produced affidavits from prison officials who manually and electronically searched prison databases to locate any record of plaintiff's grievances. Id. The Court found that plaintiff had an obligation to rebut or challenge the assertions that he did not file any proper grievances, and his bare assertion that he did file grievances did not meet that obligation. Id. at 830-31.

Like the plaintiff in Harvey, Springs responds to Wexford's evidence and supporting affidavits that he never filed any formal grievances with only the bald, unsupported assertion that he did. Unlike the plaintiff in Small, Springs has made no showing that some defect or feature of the grievance process rendered the administrative remedy unavailable to him. In Small, the issue was that the plaintiff did not act after the prison failed to respond to his grievances, thereby depriving him of access to the appeals process for his grievances. Here, Springs has made no showing that he even initiated the grievance process by filing the appropriate grievance forms with the proper prison official.

Springs is not entitled to a jury trial on the issue of exhaustion, and so the Court is the appropriate factfinder for any disputed factual issues related to his failure to exhaust. But in this case, Springs has failed to create a disputed issue of material fact for the Court to resolve. His unsupported claim that he did in fact file grievances is the type of bald assertion that cannot overcome the defendants' factual allegations outside the pleadings demonstrating the absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 323. Springs's argument that the administrative remedy was unavailable to him is a similarly unsupported allegation that would further require the Court to grant him the benefit of multiple unreasonable inferences to which he is not entitled. GFL Advantage Fund, Ltd., 272 F.3d at 210-11. As such, he has not presented even a scintilla of evidence that he filed any grievances or that the prison's remedial process was unavailable to him.

We therefore find that Wexford is entitled to judgment in its favor because Springs has failed to meet his burden of demonstrating any disputed issue of material fact regarding his failure to exhaust his administrative remedies.

**V.**    **Conclusion**

All three defendants have demonstrated that they are entitled to judgment as a matter of law because Springs failed to exhaust his administrative remedies pursuant to the PLRA prior to filing this lawsuit. We will therefore grant the defendants' motions for summary judgment. An appropriate Order follows.

BY THE COURT:

   /s/ Stewart Dalzell, J.
Stewart Dalzell, J.